### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,           )
                                    )
                 Plaintiff,         )     **CRIMINAL ACTION**
                                    )
v.                                  )     No.  13-10156-MLB
                                    )
JEREMY HARRIS,                      )
                                    )
                 Defendant.         )
_____    )

### MEMORANDUM AND ORDER

This case comes before the court on the following motions:

1) Defendant Jeremy Harris' motion to dismiss (Doc. 78) and the government's response (Doc. 87); and

2) Defendant's motion to quash the warrant and suppress evidence (Doc. 79) and the government's response (Doc. 89).

I.    **Facts**

Wichita Police Officer Michael Thode submitted a 42-page affidavit to Magistrate Judge Karen Humphreys which detailed the investigation of defendant Jeremy Harris and co-defendant Jason Giesy. The affidavit contains specific information provided by various individuals concerning defendant's alleged drug trafficking.

On May 8, 2012, Robert Cirkel was interviewed by the police. Cirkel purchased twenty pound quantities of marijuana from defendant every two weeks during eighteen months prior to the interview. Cirkel stated that defendant lived at 31st and Oliver. Cirkel paid for the marijuana at the Oliver residence but defendant stated that did not keep marijuana at the residence. Cirkel informed officers that defendant obtained 80 to 120 pounds of marijuana every two weeks.

Prior to early June 2013, Co-defendant Evan Woolsey would purchase (on a front) up to 100 pounds of marijuana from Jeremy Harris, who would instruct him to pick up the marijuana from 3407 E. Sunnybrook. Woolsey identified Giesy as the person who he encountered when he picked up marijuana at the Sunnybrook residence. At times, Woolsey has picked up marijuana at the Oliver residence. Woolsey would later pay Giesy or defendant at the Oliver residence.

On April 4, 2013, officers stopped Joel Salas as he left 3407 E. Sunnybrook with approximately two pounds of marijuana. Salas informed the officer that he intended to sell the marijuana. At a later date, Salas informed officers that Giesy kept marijuana in the deep freezer in his kitchen. Giesy also had surveillance cameras at the residence.

On April 17, defendant spoke to Christopher Harris while he was detained in the Sedgwick County Jail. Defendant stated that he believed his residence in Plainview was under surveillance because officers stopped Salas. The Sunnybrook residence is in the Plainview area. The affiant believed that defendant was talking about the Sunnybrook residence. Woolsey told officers that defendant spent money to move Giesy "out east" because the Sunnybrook residence was being watched.

On June 21, Woolsey agreed to participate in a controlled buy from defendant at 3112 S. Oliver. Officers provided Woolsey with $100 and searched his person for narcotics. Officers, however, did not search Woolsey's vehicle. Woolsey was observed going inside the Oliver residence and exiting a few minutes later. Woolsey provided officers with a white, powdery substance that tested positive for

-2-

cocaine.   Woolsey was then searched a second time by officers for contraband.

On August 2, 2013, defendant was stopped after leaving 14372 SW Butler Rd.   Tracy Freeman and Huciel Salas were also stopped after leaving the Butler Road residence and officers seized approximately thirty pounds of marijuana from their vehicle.   Freeman stated that they were delivering the marijuana to defendant and Joshua Harris at 3129 Bunker Hill.   Freeman told officers that they would find marijuana at the Butler Road residence.

Officers then executed a search warrant at 14372 SW Butler Road, Rose Hill, Kansas.   The officers found approximately 1000 pounds of marijuana during the search.   Freeman also informed officers that defendant is the head of a drug ring in Wichita, Kansas.   Freeman identified Giesy as a person who provides a stash house for defendant. Freeman stated that the stash house was located in Augusta, Kansas, at 9572 SW Eugene (Giesy's residence), and was used to break down a 1000 pound load of marijuana in mid-July.

Based on this information, affiant Thode requested permission to search the Oliver residence and seize financial records, currency, telephones, firearms, drugs and drug paraphernalia.   Affiant Thode stated that he believed, based on the facts presented, that defendant is the leader of a large marijuana distribution network in Wichita and that the Oliver residence is used by co-conspirators to make payments for drug debts and to store drugs.   Additionally, affiant Thode sought a "no-knock" entry because he believed that there was a clear risk of encountering armed individuals at the residence based on his experience that traffickers keep weapons in their property to protect

the drugs and money.  (Affidavit ¶ 113).

On August 14, 2013, Magistrate Judge Karen Humphreys issued a search warrant for 3112 South Oliver in Wichita, Kansas.  The warrant authorized a "no-knock" search to be executed on or before August 23, 2013, in the daytime, between the hours of 6:00 a.m. and 10:00 p.m. According to the return, the search warrant was executed on August 15, 2013 at 6:00 a.m.  The officers seized documents, cash, a cell phone, a scale, a camera, TV monitors, a VCR, security cameras and a Mercedes vehicle.

### The Indictment

Defendant and co-defendant Jason Giesy are charged in a superseding indictment with conspiracy to distribute marijuana (count 1), possession with intent to distribute marijuana (count 2), conspiracy to launder monetary instruments (count 3) and tampering with a witness (count 4).  The superseding indictment also names two additional co-defendants.  Co-defendant Amanda Harris is charged in count 5 with tampering with a witness.[1]  The last co-defendant, Evan Woolsey, is charged in count 6 with possession of a firearm during a drug trafficking crime.  All co-defendants have entered guilty pleas and been sentenced by the court.  Defendant's case is set for trial on December 2, 2014.

## II.  Analysis

### A.    Motion to Quash the Search Warrant

Defendant challenges the search warrant on the following grounds:

---

[1]  Defendant is charged with threatening officer Michael Thode while Amanda Harris is charged with threatening Re'anne Giesy.  (Doc. 47).

1) the affidavit contained misrepresentations and intentionally omitted information; 2) the affidavit lacked probable cause; 3) there was no basis to issue a "no knock" warrant; and 4) the items seized exceeded the scope of the warrant.

### 1.   False Information

Defendant seeks a <u>Franks</u> hearing on the basis that the affidavit contained false statements and omitted material facts. The government responds that defendant did not make a sufficient showing for a hearing under <u>Franks v. Delaware</u> because he failed to submit affidavits establishing an omission or falsehood. (Doc. 89 at 12-13).

The parties are well aware of the standards announced in <u>Franks v. Delaware</u>, 438 U.S. 154, 171-2 (1978).

> "Under <u>Franks</u>, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." (Citations omitted). "The standards of deliberate falsehood and reckless disregard set forth in <u>Franks</u> apply to material omissions, as well as affirmative falsehoods." (Citations omitted). If, after considering the evidence presented at a <u>Franks</u> hearing, the district court concludes by a preponderance of the evidence that the affidavit contains "intentional or reckless false statements," (citations omitted), or "material omissions," (citations omitted), "then the district court must suppress the evidence obtained pursuant to the warrant." (Citations omitted). If, however, the district court concludes that the omitted information would not have altered the magistrate judge's decision to authorize the search, then the fruits of the challenged search need not be suppressed. (Citations omitted).

<u>United States v. Avery</u>, 295 F.3d 1158, 1166-67 (10th Cir. 2002). Defendant must show that the affiant made intentional or reckless omissions as opposed to omissions negligently made or by innocent mistake. <u>United States v. Artez</u>, 389 F.3d 1106, 1116 (10th Cir.

2004).

In order to be entitled to an evidentiary hearing under <u>Franks v. Delaware</u>, "the defendant must allege deliberate falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." <u>United States v. Artez</u>, 389 F.3d 1106, 1116 (10th Cir. 2004) (citing <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978)). To support such allegations, a defendant should provide affidavits of witnesses or satisfactorily explain their absence. <u>See id.</u> In addition, a defendant seeking an evidentiary hearing must show that, after the challenged portions of the affidavit are stricken, the remaining content of the affidavit is not sufficient to support a finding of probable cause. <u>See id.</u>; <u>United States v. Nelson</u>, 450 F.3d 1201, 1213-14 (10th Cir. 2006).

Defendant implies that the affidavit contained misrepresentations because negative or impeachment material about both Circkel and Woolsey was "hidden" in footnotes towards the end of the affidavit. Defendant cites no support for his argument that the location of impeachment material within an affidavit can constitute a misrepresentation.[2]

Additionally, defendant states that the affiant failed to list all items that were seized from Woolsey's residence during a search. The government responds that defendant has failed to provide the court with an offer of proof concerning the search and that the omission of

---

[2] Defendant also argues that there is some sort of "misrepresentation" because the information concerning the controlled buy was not contained in the probable cause affidavit. (Doc. 1). Defendant's argument is confusing, at best. There is no authority to support the position that a probable cause affidavit and an affidavit in support of a search warrant must contain the same allegations.

those items was not material.  The court agrees.  There is no evidence
that the failure to list all items seized in the search was
intentional on the part of the affiant.  Moreover, the affidavit
disclosed Woolsey's criminal activity and the fact that he is a drug
dealer and a user.  Therefore, the omission of the seized items was
not material because disclosure of additional drugs and a weapon would
not have had an impact on his credibility.[3]  See United States v.
Sharbutt, 2005 WL 19492, *4 (10th Cir. Jan. 5, 2005)("Knowing [the
informant] was already a felon and frequent drug user, it is unlikely
the magistrate judge would have found her possession of marijuana and
other drug paraphernalia, or the violation of her probation for drug
use, material to any reliability determination already made. Likewise,
her possession of firearms is also unlikely to materially change such
a determination.")

### 2.    Probable Cause

The Fourth Amendment to the United States Constitution provides
that:

> [t]he right of the people to be secure in their
> persons, houses, papers, and effects, against
> unreasonable searches and seizures, shall not be
> violated, and no Warrants shall issue, but upon
> probable cause, supported by Oath or affirmation,
> and particularly describing the place to be
> searched, and the persons or things to be seized.

U.S. Const. amend. IV.  The validity of a warrant is not determined

---

[3] Defendant also comments about the legitimacy of the controlled
buy in a footnote.  Defendant avers that Woolsey supplied the cocaine
in his car and not from defendant.  Defendant, however, offers no
affidavit to support his position nor is there any evidence that Thode
believed that Woolsey provided the cocaine.  Therefore, there is no
misrepresentation contained in the affidavit concerning the controlled
buy.

by "nit-picking" discreet portions of the application.  Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed.  Illinois v. Gates, 462 U.S. 213, 238-39 (1983); United States v. Harris, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." Harris, 369 F.3d at 1165 (quoting United States v. Hernandez-Rodriquez, 352 F.3d 1325, 1330 (10th Cir. 2003)).  The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." United States v. Rowland, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990)).

The Supreme Court has observed that "a magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).  In doing so, reviewing courts must apply the totality of the circumstances test:

The task of the issuing magistrate judge is simply to

-8-

> make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for. . . conclud[ing] that probable cause existed.

Gates, 462 U.S. at 238-39 (internal citation omitted).

Defendant argues that probable cause was lacking to support the search warrant because no nexus existed to connect any illegally activity to the residence searched. Essentially, defendant argues that there is no evidence there were drugs stored in the home. Defendant reaches this conclusion by disregarding Woolsey's and Cirkel's statements. (Doc. 79 at 8).

The Tenth Circuit requires that a "nexus [exist] between the contraband to be seized or suspected criminal activity and the place to be searched." United States v. Gonzales, 399 F.3d 1225, 1228 (10th Cir. 2005). In this case, the affidavit establishes that defendant is a high volume marijuana distributor. Defendant receives large shipments of marijuana every two weeks and sells the marijuana to other dealers who in turn sell it to their customers. While defendant may or may not store the large shipments of marijuana at the Oliver residence, he takes payment for the marijuana at that residence. Moreover, Freeman informed officers that defendant keeps his drug records in the hood above his stove at the Oliver residence. (Affidavit ¶ 110). Additionally, two months prior to the search, Woolsey bought cocaine from defendant at the Oliver residence.

In One Hundred Forty-Nine Thousand Four Hundred Forty-Two and 43/100 Dollars ($149,442.43) in U.S. Currency, 965 F.2d 868 (10th Cir.

1992), the Tenth Circuit held that probable cause existed to believe that the defendant's residence would contain records of drug transactions based upon statements in the affidavit that drug dealers kept records in their homes <u>and</u> evidence that the defendant was a large drug dealer and had been for many years.  In this case, the affidavit clearly contains several statements from individuals that defendant is a heavy drug dealer.  Moreover, based upon the statements in the affidavit, defendant accepts payment and keeps records at his Oliver residence.  Therefore, the court finds that the affidavit was sufficient to establish that probable cause existed to search 3112 S. Oliver.  <u>See</u> <u>United States v. Biglow</u>, 562 F.3d 1272 (10th Cir. 2009)(probable cause to search residence due to information that the defendant was involved in a drug distribution ring even though there was no evidence of drug transactions at the residence).

### 3.   "No-knock" Execution

Defendant asserts that the "no knock" search warrant violated his Fourth Amendment rights because the affidavit failed to establish that there was reason to believe that the officers would encounter danger when executing the search warrant.  Defendant contends that the evidence seized must be suppressed as a result of the violation.

"Generally, law enforcement officers must announce their presence and provide residents an opportunity to open the door before executing a search warrant." <u>United States v. Brown</u>, 2006 WL 1997641, *2 (10th Cir. July 18, 2006)(citing <u>Hudson v. Michigan</u>, 547 U.S. 586, 589 (2006)).  The remedy for a failure to knock and announce, however, does not include suppression of the evidence seized.  <u>Id.</u>  Therefore, the court does not need to evaluate the affidavit to determine if the

officers had a legitimate basis to fear for their safety during the execution of the search warrant. Id. ("Given the Court's ruling in Hudson, it is unnecessary for this court to determine whether, under the circumstances presented in this case, law enforcement's fear of evidence destruction justified an exemption from the knock-and-announce rule.")

Defendant's motion to suppress the evidence on this basis is denied.

### 4.   Scope of the Warrant

Finally, defendant contends that the officers exceeded the scope of the warrant by seizing the television monitors, VCR, camera, security cameras and defendant's Mercedes. "Under the Fourth Amendment, every warrant must particularly describe[e] the place to be searched, and the persons or things to be seized." United States v. Emmons, 24 F.3d 1210, 1216 (10th Cir. 1994). "The Fourth Amendment requires warrants to describe particularly the things to be seized, so that 'nothing is left to the discretion of the officer executing the warrant.'" United States v. Robertson, 21 F.3d 1030, 1033 (10th Cir. 1994) (quoting Stanford v. Texas, 379 U.S. 476, 485 (1965)).

"[T]he general rule, where executing officers exceed the scope of a warrant, is that only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant." United States v. Le, 173 F.3d 1258, 1269 (10th Cir. 1999). However, when the violation may be fairly described as "flagrant," blanket suppression of all evidence seized, whether lawfully or unlawfully, may be required. United States v. Foster, 100 F.3d 846, 849 (10th Cir. 1996).

-11-

The government argues that the items were lawfully seized pursuant to the search warrant which authorized the seizure of: "(e) United States currency and financial instruments, including stocks, bonds, and other securities, which may constitute proceeds of the previously described offenses or property used to facilitate the commission of these offense [sic]." (Search Warrant, attach. B). The government asserts that the items were either used to facilitate in the commission of the drug crimes or proceeds of the drug crimes. In order to reach that conclusion, however, the court would need to speculate as to the officers' reasons for seizing the items.

Therefore, the court will take the motion under advisement and hold a suppression hearing on this discrete issue prior to jury selection.

**B.   Motion to Dismiss**

Defendant moves to dismiss count 4 of the superceding indictment on the basis that the allegations fail to establish the charge.[4] Fed. R. Crim. P. 7(c) requires an indictment be merely a "plain, concise and definite written statement of the essential facts constituting the offense charged."   An indictment is held only to minimal constitutional standards, and the sufficiency of the indictment is determined "by practical rather than technical considerations." United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). "An indictment is sufficient if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against

---

[4] Defendant moves for dismissal of count 2 in his memorandum. Defendant, however, quotes count 4 of the superceding indictment, which was originally charged in count 2 of the original indictment.

which he must defend and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense." <u>United States v. Poole</u>, 929 F.2d 1476, 1479 (10th Cir. 1991).

Count 4 of the superceding indictment charges defendant with a violation of 18 U.S.C. § 1512(b)(1). To establish the elements of the charge, the government must prove beyond a reasonable doubt that defendant (1) knowingly, (2) attempted to intimidate and/or threaten Officer Thode (3) with the intent to influence his testimony (4) at an official proceeding. <u>United States v. Stroup</u>, No. 07-8085, 2008 WL 2914964 (10th Cir. July 30, 2008). Defendant argues that there was no official proceeding and that defendant's statements were not sufficient to constitute an attempt to intimidate. (Doc. 78 at 3-4). The court, however, does not consider the evidence at this stage of the proceedings. The allegations charged in the superceding indictment set forth the elements of section 1512(b)(1). Therefore, the indictment is sufficient. <u>Poole</u>, 929 F.2d at 1479.

## III. Conclusion

Defendant's motion to dismiss is denied. (Doc. 78). Defendant's motion to squash the search warrant and suppress the evidence is denied in part and taken under advisement in part. (Doc. 79).

A suppression hearing will be held on December 2, 2014 at 10:00 a.m. The jury trial will commence on December 3, 2014 at 9:00 a.m.

IT IS SO ORDERED.

Dated this ___24th___ day of November 2014, at Wichita, Kansas.

                              ___s/ Monti Belot___
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE

-13-